**Bruce L. Campbell, P.C.**, OSB No. 925377
bruce.campbell@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BRINTON BUSINESS VENTURES, INC., a Washington corporation, doing business as Evergreen Vending and/or Vending Equipment Center and/or Northwest Coffee Services and/or Avanti Markets Northwest, | Case No. 3:16-cv-2279 |
| Plaintiff, | COMPLAINT FOR BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES, BREACH OF FIDUCIARY DUTY, AND INJUNCTIVE RELIEF |
| v. | (28 U.S.C. § 1332) |
| RICHARD SEARLE, an individual, | DEMAND FOR JURY TRIAL |
| Defendant. | |

Page 1 -    Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiff Brinton Business Ventures, Inc., doing business as Evergreen Vending, and/or Vending Equipment Center, and/or Northwest Coffee Services, and/or Avanti Markets Northwest, alleges as follows:

## THE PARTIES

1.      Plaintiff Brinton Business Ventures, Inc., doing business as Evergreen Vending, and/or Vending Equipment Center, and/or Northwest Coffee Services, and/or Avanti Markets Northwest ("Brinton") is a Washington corporation with its principal place of business at 13800 Tukwila International Boulevard, Tukwila, Washington, 98168.

2.      Defendant Richard Searle is an individual residing in Washington County, Oregon.

## JURISDICTION AND VENUE

3.      This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states where the amount in controversy exceeds $75,000, exclusive of costs and interest.

4.      This court has personal jurisdiction over Defendant Richard Searle because he resides in Washington County, Oregon.

5.      Venue is proper within this District under 28 U.S.C. § 1391 because Defendant Richard Searle is a resident of Oregon and a substantial part of the events or omissions giving rise to the claims occurred in Oregon.

## FACTUAL ALLEGATIONS

6.      Brinton incorporates the above allegations.

4817-5854-2396.5

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

7.      Founded in 1986, Brinton is a family-owned and operated Pacific Northwest company.  Among other ventures, Brinton contracts with employers to install, service, maintain, and operate "micro markets" at workplaces around Oregon and Washington.  Micro markets are unattended retail stores located directly on the premises of large employers, offering employees the opportunity to purchase food, beverages, and other items without leaving their workplace.  Brinton's micro markets utilize touch screen kiosks, smartphone applications, and other technologies to provide quick and efficient purchases 24 hours a day.  In addition, Brinton's micro markets focus on stocking food and beverage options that encourage and sustain a healthy lifestyle.

8.      Brinton operates (through its d/b/a Avanti Markets Northwest) approximately 700 micro markets in Washington and Oregon.  Brinton operates its micro markets in the Pacific Northwest through branches located in Seattle, Tumwater, and Portland. The Portland branch covers a territory stretching from Longview, Washington, south to Eugene, Oregon.

9.      On January 8, 2012, Richard Searle accepted an offer to be the branch manager for Brinton's office in Portland, Oregon.  Before he was employed by Brinton, Mr. Searle primarily worked in the laundry business, and had no experience in the micro market industry.  Upon accepting Brinton's employment offer, Mr. Searle stated he would resign from his then-current employer on January 27, 2012, and would begin working for Brinton on January 30, 2012.

10.     On January 13, 2012, Mr. Searle visited Brinton's Portland branch office and was given a packet of information regarding his new job at Brinton.  As part of his new-hire

Page 3 -      Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

packet, Mr. Searle received a copy of an agreement containing non-competition and non-solicitation provisions he would be required to sign in return for serving as branch manager of the Portland office.  As of January 13, 2012, when Mr. Searle received the new-hire packet, Mr. Searle's start date was still set for January 30, 2012.

11.     At some time between January 13, 2012, and January 23, 2012, Mr. Searle contacted Brinton and stated his desire to move up his employment start date.  Mr. Searle stated that his previous employer had terminated his employment effective January 20, 2012. Mr. Searle did not wish to lose a week of income and asked if he could start working for Brinton on January 23, 2012.  Brinton agreed to Mr. Searle's request and permitted Mr. Searle to begin working on January 23, 2012.

12.     On January 23, 2012, Mr. Searle arrived at Brinton's offices and signed an agreement that contained non-competition and non-solicitation provisions (a true and correct copy of the agreement is attached as Exhibit A).  The non-competition provision prohibits Mr. Searle from competing with Brinton in a specified geographic area for two years after his employment ends with Brinton:

> "Employee agrees that he/she will not own, manage, operate, control or be employed by, participate or be connected in any manner, or in any way be associated in any other relation or capacity whatsoever with the ownership, management, operation or control of any business engaged in rendering services related to the vending, marketing and/or distribution of food, snack or related items to consumers at or near their place of employment during the period of his/her employment by Company and for a period of two (2) years after the termination of his/her employment by Company, regardless of the cause thereof, within a distance 30 miles in all directions from any of the Companies current customers."  (Exhibit A at ¶ 1.)

Page 4 -     Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

13. The agreement also contained a non-solicitation provision, which prohibits Mr. Searle from soliciting, for two years after his employment ends with Brinton, any persons who were Brinton's customers or prospective customers when Mr. Searle worked at Brinton:

> "Employee agrees that for a period of two (2) years after such employment ceases, regardless of the cause thereof, he/she shall not directly or indirectly aid in soliciting any business relating to that conducted by Company as described above from any persons who were customers or prospective customers of Company prior to the cessation of his/her employment. Nor, shall they contact any of Company's existing employees in an effort to solicit them away from Company." (Exhibit A at ¶ 4.)

14. The agreement explicitly stated that adhering to its terms was required as a condition of Mr. Searle's employment.

15. As a result of agreeing to this non-competition and non-solicitation agreement, Mr. Searle was allowed access to, became familiar with, and acquired knowledge about Brinton's customers, target customers, employees, operations, pricing methods, delivery schedules, sources of supply, financial information, margin profiles, product rollouts, marketing projects, pricing strategies, product allocation, data capabilities, and other confidential information, that was and remains highly important to the operations of Brinton and was never disclosed to competitors or third parties. In his position as branch manager, Mr. Searle was expected to (and did) cultivate and maintain relationships with Brinton's customers throughout Oregon and southwest Washington. Brinton's relationships with its customers are indispensable to its success.

16. For Brinton to maintain its business, customers, and confidential information, it is imperative that Brinton execute and enforce non-compete and non-solicitation agreements with those employees that it puts in relationship-building positions with customers

Page 5 -    Complaint

4817-5854-2396.5

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

and who are granted access to confidential information.  Brinton would not have, and could not afford to have, granted Mr. Searle access to confidential information and customers without his execution of a non-competition and non-solicitation agreement.

17.    The branch manager position carries great responsibilities and is critical to Brinton's success.  Under Mr. Searle's management, the Portland branch operated approximately 350 micro markets.  Mr. Searle was in charge of approximately forty employees, and his job duties included hiring and firing employees as necessary.  He was responsible for creating, maintaining, and deepening the relationships with Brinton's customers from Longview to Eugene.  He was highly compensated for his work, receiving the highest salary in the Portland branch, and the third highest salary in the entire company.  He reported directly to Bruce Brinton, the vice president of the company, who in turn reported directly to Jim Brinton, the president of the company.

18.    Mr. Searle worked as branch manager of Brinton's Portland branch from January 2012 to March 2016.  During that time, Mr. Searle received annual bonuses and several base salary raises.  On March 17, 2016, Mr. Searle sent an email to Jim Brinton and Bruce Brinton, in which he stated that he wished to resign his position at Brinton.

19.    While still employed by Brinton, on March 22, 2016, Mr. Searle filed a registration with the Oregon Secretary of State to establish a new business named R Squared Markets & Vending Corporation.  The incorporators listed in the filing with the Secretary of State were Mr. Searle and Richard Corwin.  At the time of the filing, Mr. Corwin was a general manager at Brinton's Portland branch, working under Mr. Searle's supervision.  Mr. Corwin and Mr. Searle had been friends before they both began working for Brinton.  Indeed, Mr. Searle had

Page 6 -    Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

hired Mr. Corwin to the Portland branch.  Brinton had no knowledge that its employees, Messrs. Searle and Corwin, were forming a new business to compete against Brinton.

20.     One day after he set up his secret, competing business, Mr. Searle offered to continue to work for Brinton until April 15, 2016.  In return, Mr. Searle made the following demands on Brinton:

a.     pay Mr. Searle his salary through April 15;

b.     pay Mr. Searle an extra two weeks salary for the vacation he would have earned had he continued working through the end of the year;

c.     pay Mr. Searle an additional "bonus" of $2,000; and

d.     agree not to contest Mr. Searle's application for unemployment benefits with the state of Oregon, despite his voluntary resignation.

21.     Brinton declined Mr. Searle's offer.  On April 1, 2016, Mr. Searle's employment with Brinton ended.

22.     Although he had already co-founded a clandestine, competing business with Mr. Searle, Mr. Corwin continued to work for Brinton.  Mr. Corwin did not announce his resignation until June 1, 2016, and did not leave Brinton's employ until June 15, 2016.

23.     Despite having voluntarily resigned his position at Brinton (and setting up a competing business), Mr. Searle applied to the state of Oregon for unemployment benefits in April 2016.  Because Mr. Searle quit voluntarily, Brinton contested Mr. Searle's claim for benefits.  In a May 19, 2016 hearing before an administrative law judge, Mr. Searle was adjudged to have "voluntarily left work without good cause."  Mr. Searle was, therefore, denied unemployment benefits.

Page 7 -     Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

24.    In late September 2016, Brinton's largest customer in Oregon, Lam Research, suddenly cancelled its contract with Brinton.  At the time of cancellation, Brinton was operating five micro markets at Lam Research's Tualatin campus and Lam Research had been a Brinton customer for approximately six years.  Although he did not originate or develop the Lam Research account, Mr. Searle was responsible for the account during his time as branch manager.

25.    On information and belief, Mr. Searle solicited the business of Lam Research and induced Lam Research to abandon its relationship with Brinton and to sign a contract with Mr. Searle's new business.  On information and belief, Mr. Searle and his business are now operating one or more micro markets on Lam Research's Tualatin campus.

26.    Other long term customers of Brinton have recently cancelled their contracts suddenly and without explanation.  These customers include Clearesult and Ochin in Portland, and Nippon Dynowave in Longview.  Once again, these were customers that Mr. Searle managed while at Brinton.  On information and belief, Mr. Searle induced these customers to terminate their relationship with Brinton and enter into business with Mr. Searle.

## FIRST CLAIM FOR RELIEF

### (Breach of Non-Competition Agreement)

27.    Brinton incorporates the above allegations.

28.    The non-competition agreement between Mr. Searle and Brinton prohibits Mr. Searle for a period of two (2) years following the termination of Mr. Searle's employment, from engaging in any business that competes with Brinton within a thirty (30) mile radius from each of Brinton's customers.  (Exhibit A ¶ 1.)

Page 8 -    Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

29.     On information and belief, Mr. Searle has breached the terms of the non-competition agreement by establishing his own company in direct competition with Brinton within two years of his termination as an employee of Brinton, and within the same territory Mr. Searle covered for Brinton.

30.     Brinton has performed all conditions and obligations precedent on its part to Mr. Searle's obligations under the non-competition agreement.

31.     As a direct and proximate result of Mr. Searle's breaches, Brinton has sustained damages in an amount to be proven at trial.  In the alternative, Brinton is entitled to specific performance.

32.     Under its agreement with Mr. Searle, Brinton is entitled to recover its attorney fees and costs incurred in pursuing an action to enforce the non-competition agreement.

## SECOND CLAIM FOR RELIEF

### (Breach of Non-Solicitation Agreement)

33.     Brinton incorporates the above allegations.

34.     The non-solicitation agreement between Mr. Searle and Brinton prohibits Mr. Searle from directly or indirectly soliciting any persons who were Brinton's customers or prospective customers when Mr. Searle worked for Brinton for a period of two (2) years following the termination of Mr. Searle's employment.  (Exhibit A ¶ 4.)

35.     On information and belief, Mr. Searle has breached the non-solicitation provision by directly and/or indirectly soliciting Brinton's customers and/or prospective customers within two years of his termination as a Brinton employee.

Page 9 -     Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

36.     Brinton has performed all conditions and obligations precedent on its part to Mr. Searle's obligations under the non-solicitation agreement.

37.     As a direct and proximate result of Mr. Searle's breaches, Brinton has sustained damages in an amount to be proven at trial.  Brinton is also entitled to specific performance.

38.     Under its agreement with Mr. Searle, Brinton is entitled to recover its attorney fees and costs incurred in pursuing an action to enforce the non-solicitation agreement.

### THIRD CLAIM FOR RELIEF

### (Tortious Interference with Business Expectancies)

39.     Brinton incorporates the above allegations.

40.     Brinton has valid business expectancies related to sales to customers in Oregon and Washington.

41.     Mr. Searle has knowledge of these expectancies.

42.     While employed with Brinton, Mr. Searle had substantial contacts with Brinton's customers and had access to a wealth of former, current, and potential customer information, as well as other sensitive information related to Brinton.

43.     On information and belief, despite the agreement prohibiting him from doing so, Mr. Searle is engaging in business that competes with Brinton for the customers for which Mr. Searle provided services while at Brinton.  Upon information and belief, Mr. Searle is also using information related to Brinton's customers and customer information obtained solely through his position with Brinton to solicit and obtain business for his own company, in violation of the non-compete and non-solicitation provisions of his agreement.

4817-5854-2396.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

44.    Mr. Searle has intentionally and improperly interfered with Brinton's business expectancies.  Mr. Searle is using information and relationships entrusted to him while employed with Brinton to benefit himself financially at the expense of Brinton.

45.    Brinton has suffered damages and stands to lose substantial revenue, in amounts to be proven at trial, as the proximate result of Mr. Searle's conduct.

## FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

46.    Brinton incorporates the above allegations.

47.    As branch manager of Brinton's Portland office, Mr. Searle owed fiduciary duties to Brinton, including a duty of loyalty.

48.    While still employed by Brinton, Mr. Searle incorporated a new Oregon business named R Squared Markets & Vending Corporation.  Upon information and belief, this corporation was formed to enter into the same business as Brinton and compete against Brinton. Upon information and belief, Mr. Searle formed this corporation with the intention of inducing Brinton's customers to leave Brinton and instead do business with R Squared Markets & Vending Corporation.

49.    Upon information and belief, Mr. Searle induced or encouraged Mr. Corwin to join Mr. Searle at R Squared Markets & Vending Corporation when Mr. Searle and Mr. Corwin were employed at Brinton, and Mr. Searle was supervising Mr. Corwin at Brinton.

50.    Mr. Searle intentionally and improperly breached his fiduciary duties to Brinton.

Page 11 -    Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

51.    Brinton has suffered damages and stands to lose substantial revenue, in amounts to be proven at trial, as the proximate result of Mr. Searle's conduct.

## FIFTH CLAIM FOR RELIEF

### (Injunctive Relief)

52.    Brinton incorporates the above allegations.

53.    Brinton has a clear legal and/or equitable right to prohibit Mr. Searle from engaging in the above-described competitive acts because he expressly agreed to not compete with Brinton or solicit its customers for two years after he terminated his employment at Brinton. Brinton also has protectable rights in its confidential information and its customer relationships. Mr. Searle is acting in breach of the explicit terms of the agreement, intentionally interfering with Brinton's contractual and business relationships, and misappropriating confidential information of Brinton to the substantial harm, damage, and detriment of Brinton.

54.    In addition to Brinton's common law right to an injunction, Mr. Searle also explicitly agreed that Brinton has the right to "an immediate injunction by any competent court enjoining and restraining [him] and each and every other person involved from the continuance of prohibitive activities."  (Exhibit A at ¶ 5.)

55.    Mr. Searle's continued conduct will result in substantial injury to Brinton because its Oregon and Washington customers are a vital component of Brinton's business.

56.    The court should enter a preliminary injunction to prevent further harm to Brinton and enter a permanent injunction at trial.

## DEMAND FOR JURY TRIAL

57.    Plaintiff demands a trial by jury.

4817-5854-2396.5

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays for relief, as follows:

1.      An order and judgment preliminarily and permanently enjoining

Mr. Searle from competing with Brinton and/or soliciting the customers of Brinton in violation

of the agreement entered into between Brinton and Mr. Searle;

2.      Actual, consequential, and punitive damages, in an amount to be proven at

trial;

3.      Attorney fees, costs, and disbursements as provided under the non-

competition and non-solicitation agreements, and under any applicable doctrine or equity; and

4.      For such further relief as this court may deem just and equitable.

DATED this 6th day of December, 2016.

                                        MILLER NASH GRAHAM & DUNN LLP


                                        *s/ Bruce L. Campbell*
                                        Bruce L. Campbell, P.C., OSB No. 925377
                                        bruce.campbell@millernash.com
                                        Phone: 503.224.5858
                                        Fax: 503.224.0155


                                        *Attorneys for Plaintiff*

Page 13 -    Complaint

4817-5854-2396.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204